[2 NYS3d 771]

1809-15 7TH AVENUE HDFC, Petitioner, v TABOLEE BOUEY et al., Respondents.

Civil Court of the City of New York, New York County, January 16, 2015

## APPEARANCES OF COUNSEL

*Thomas S. Fleishell*, New York City, for petitioner.
*Salami-Oyakhilome, P.C.*, Jamaica, for respondents.

### OPINION OF THE COURT

SABRINA B. KRAUS, J.

## Background

This summary nonpayment proceeding was commenced by 1809-15 7th Avenue HDFC (petitioner) and seeks to recover possession of 1809 7th Avenue, apartment 6F, New York, NY 10026 (subject premises) based on the allegation that Tabolee Bouey (respondent), the proprietary lessee, has failed to pay maintenance due for the subject premises. Specifically, petitioner seeks $14,948.96 for reimbursement of expenses in making repairs to various units in the building, which were damaged from a leak alleged to have originated from the subject premises. Nina Bouey-Battle, Benkai Bouey, as trustee of the Tabolee Bouey Irrevocable Trust and John Doe (collectively undertenants) are named as undertenants.

## Procedural History

Petitioner issued a rent demand dated March 13, 2014, seeking $15,763.96 in arrears and attorneys fees. The petition is dated March 25, 2014. On April 29, 2014, respondent and undertenants appeared and filed an answer asserting five affirmative defenses. The answer asserted that respondent did not cause the damage, that the repairs were the obligation of petitioner and that petitioner is collaterally estoppel from seeking reimbursement against respondent. The answer further alleges that petitioner lacks standing, failure to state a cause of action, and related defenses.

The proceeding was initially returnable May 6, 2014. On July 24, 2014, respondent moved for an order dismissing the proceeding pursuant to CPLR 3211 (a). The motion was denied by the court (Hahn, J.) on August 26, 2014, based on respondent's failure to appear in support of the motion. The order

provided "MDNAM per application of P's atty. Someone checked in AM calendar, never returned as of 2:43 pm."

On November 10, 2014, the proceeding was assigned to Part L for trial. The trial commenced on November 10, continued on November 24, and concluded on December 9, 2014. At the conclusion of the trial, the court reserved decision.

### Prior Related Proceeding

There was a prior nonpayment proceeding between the parties under index number 70866/2013. Petitioner commenced that proceeding seeking the same $14,948.96 for reimbursement as is sought herein. The petition is dated June 2013. The trial took place in December 2013. After trial, the court (Stoller, J.) dismissed the proceeding. The court found that the petitioner had passed a resolution dated February 1, 2013 requiring respondent to pay the $14,948.96 within one year of the date of the resolution. Based on the resolution, the court found that the rent demand issued in June 2013 was premature and that petitioner's cause of action had not yet accrued.

### Findings of Fact

Respondent is the proprietary lessee of the subject premises, pursuant to a proprietary lease dated September 13, 2004 (exhibit 1) and a stock certificate issued on the same date (exhibit 2). Petitioner is the landlord, proprietary lessor and the owner of the subject building (exhibit 3). There was a valid multiple dwelling registration for the subject premises filed in June 2014 (exhibit 4).

Respondent has not been residing in the subject premises. From December 2011 to December 2012, respondent had sublet the subject premises with petitioner's approval. Ben Bouey (Bouey) is respondent's son, and petitioner often communicates with respondent regarding the subject premises through Bouey.

On December 1, 2012, in the early morning hours, a leak started from the subject premises. Petitioner and its board members believed that the subject premises was unoccupied and called the fire department because they were not otherwise able to gain access to the subject premises. The fire department arrived and forced open the door to the subject premises. Domingos Calaz, secretary of the board and resident of apartment 6B, Keith Covington, resident of apartment 6D, and Debbie Rondon, president of the board and resident of apartment 4B, all entered the subject premises with the firemen. Upon

entry to the subject premises, they observed that the subject premises appeared to be occupied based on furniture and various personal belongings found therein.

They also observed water on the kitchen floor of the subject premises, and a puddle of water by the cabinet to the kitchen sink. The leak was from a loose hose that ran from underneath the kitchen sink to a washing machine. The firemen turned off the water under the kitchen sink. A new lock was installed on the door to the subject premises, and an email was sent to Bouey detailing what had occurred.

Four apartments in the six line were damaged as a result of the flood. The damaged apartments were 6E, 6D, 6C, and 6B. The damage occurred in the bathroom and kitchen of the apartments.

Bouey later advised Debbie Rondon, president of the co-op board, that the subject premises were being occupied by Jessica Gomez at the time. Bouey stated Gomez was his representative, and demanded that Gomez be given access to the subject premises. Gomez is the daughter of another shareholder in the subject building. Bouey had agreed to allow Gomez to temporarily stay in the subject premises, without petitioner's permission or knowledge. Gomez lived in the subject premises for approximately two weeks in November 2012. Gomez used the washing machine in the subject premises. Gomez activated the washing machine by turning a lever under the sink.

On December 2, 2012, Gomez's father, Jesus, was permitted access to the subject premises by petitioner, to remove Gomez's personal belongings. The washing machine was removed from the subject premises on this date. There was a dispute between Bouey and Gomez regarding ownership of the washing machine. Testimony by Nina-Bouey Battle, the current occupant, indicated that as of the date of the trial the washing machine was back in the subject premises but not connected.

On December 3, 2012, another leak occurred. By this date, the keys to the new lock for the subject premises had been sent to Bouey, and again the fire department had to be called to gain access to the subject premises. However, this leak was minor, in comparison to the first leak, and did not cause any additional damage to the four other apartments. By December 3, 2012, the washing machine had been removed from the subject premises, but the hose was still connected under the sink and was leaking water.

Respondent did not appear at the trial personally and did not testify. However, one of the undertenants, Battle did appear and testify. Battle has been living in the subject premises since January 2013, and is respondent's daughter. The court did not find Battle to be a credible witness, particularly regarding her testimony implying there were ongoing leaks in the subject premises. While there was pointing work done on the building in late 2012, there is no evidence in the record to suggest that this was in any way related to the damage to the other apartments from the December 1, 2012 leak from the subject premises.

Petitioner hired a contractor, Reuben Rivera, to make repairs to the apartments that had been damaged by the leak. The work took approximately four to five weeks. Rivera passed away prior to the trial.

## Discussion

The rent demand herein reads in pertinent part: "The sum of $14,948.96 represents lessor's claims for reimbursement of expenses pursuant to Article 6.01 (c) incurred by lessor in performing acts which . . . the proprietary lessee was required to perform pursuant to Article 5.02 (d)."

Article 5.02 (d) is a provision labeled "Repairs by Shareholders" and provides that shareholders are responsible for painting and decorating, maintenance and repair of the interior of the apartment and fixtures, including washing machines.

Article 6.01 (c) provides that petitioner shall be entitled to recover from the shareholder all expenses incurred under paragraphs 6.01 (a) or (b). It further provides:

"If the Shareholder shall at any time be in default under this lease and the Corporation shall incur any expense (whether paid or not) in performing acts which the shareholder is required to perform . . . said expense including reasonable attorney's fees and disbursements, shall be paid by the Shareholder to the Corporation, on demand, as additional maintenance charges."

Article 6.01 (a) (i) provides that petitioner may direct respondent on 30 days' written notice to repair the subject premises or to remedy an objectionable condition. If the shareholder fails to perform the repair within the time specified, the corporation may perform the repairs. The article further provides that "If prompt action is necessary, notice of less than thirty (30) days may be given. In case of emergency, no notice is required."

There is no article 6.01 (b) in the proprietary lease submitted in evidence.

The court finds petitioner failed to establish a right to a judgment for the sums sued upon. First, article 6.01 (a) does not address repairs to the apartments of other shareholders, rather it states that petitioner could direct respondent to make repairs inside the subject premises if that item in need of repair or objectionable condition causes damage to other apartments.

Here, there is no point in time where petitioner directed respondent to make any repairs. No notice was given to respondent in accordance with the provision of the proprietary lease. In fact the first notice that respondent was given regarding petitioner's claim for reimbursement for the repairs was in February 2013, nearly three months after the incident took place (exhibit 8).

The leak took place on December 1, 2012, and the repairs commenced December 4, 2012; there was no request by petitioner during this period that respondent take over making the repairs in the other apartments, even assuming the lease provision could be interpreted to cover repairs in the apartments of other shareholders.

In order to be able to sue for these sums in Housing Court, petitioner must first establish that the damage to the other units and the cost of repairing the other units constitutes additional rent under the proprietary lease, rather than the same damages for negligence or breach of contract. The court does not find that petitioner has established this.

Moreover, even if the amount sued for did constitute additional rent, petitioner's proof of damages was wanting. While the court did admit the alleged invoices of Reuben Rivera into evidence, as petitioner's incorporated business record, and based on the fact that Mr. Rivera was deceased and could not be called to lay a foundation for the documents, the court cannot accord great weight to these documents.

Invoice number 52 (exhibit 17G) for $80 pertains to apartment 5E which was not one of the units allegedly damaged by the flood.

There are two invoices for apartment 6E (exhibits 17F, 17B). There is no explanation as to why there were two separate invoices dated the same date, although the date on exhibit 17B appears to have been altered. Moreover, 6E was empty and was being renovated by petitioner anyway for a new occupant.

It is clear that the invoice is for work beyond any related leak damage and more related to the renovation; for example the invoice calls for a new sink, dishwasher and stove and custom painting in each of the rooms. There was no evidence to determine what part of the invoice was allegedly for work related to damage from the leak. This invoice alone was for $7,400.

While petitioner did establish that the flood occurred in the subject premises and caused damage to the other four units, and while respondent may be legally responsible for reimbursing petitioner for said damages, for the reasons stated above the court finds that petitioner failed to establish that the amount sued for constitutes additional rent/maintenance under the proprietary lease.

Based on the foregoing, the petition is dismissed without prejudice to a suit for damages in a plenary action.